[Cite as *State v. Clark*, 2016-Ohio-1560.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2015-CA-23 |
| | : | |
| v. | : | Trial Court Case No. 14-CR-458 |
| | : | |
| JEREMY D. CLARK | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 15th day of April, 2016.

. . . . . . . . . .

MEGAN M. FARLEY, Atty. Reg. No. 0088515, Clark County Prosecutor's Office, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
        Attorney for Plaintiff-Appellee

JON PAUL RION, Atty. Reg. No. 0067020, and NICOLE RUTTER-HIRTH, Atty. Reg. No. 0081004, Rion, Rion & Rion, L.P.A., Inc., 130 West Second Street, Suite 2150, Post Office Box 1262, Dayton, Ohio 45402
        Attorneys for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Jeremy Clark appeals from convictions stemming from his possession of

heroin and a handgun while under disability. Finding no error, we affirm.

## I. Background

{¶ 2} Two police officers in Springfield, Ohio, responded to a domestic-dispute call. Officer Deric Nichols saw the suspect in the domestic dispute driving an SUV and began to follow him. When the driver failed to use his turn signal, Officer Nichols turned on his cruiser's lights and the SUV pulled over to the curb. Officer Tyler Elliott, who was following half-a-block behind, saw the front passenger door open and a man, later identified as Clark, jump out carrying a black bag. Elliott chased Clark on foot. He briefly lost sight of Clark, and when Elliott saw him again, Clark was walking—and was no longer carrying the black bag.

{¶ 3} Across the street from where Officer Elliott caught up with Clark lived John Blue. Blue approached Officer Elliott and told him that he saw Clark put something into a trash can a few feet away. Inside the trash can, Officer Elliott found a 30-round magazine and a black bag. Inside the black bag was a handgun and almost 50 grams of heroin.

{¶ 4} Clark was charged with trafficking in heroin (with a firearm specification), possession of heroin (with a firearm specification), having weapons under disability, improperly handling firearms in a motor vehicle, and tampering with evidence. The trafficking charge was dismissed before trial. At trial, Officer Nichols, Officer Elliott, and John Blue each testified. A jury found Clark guilty of the remaining charges. The trial court sentenced him to a total of 6 years in prison—three years for possession, one year for the firearm specification, two years for having a handgun under a disability, one year for improper handling, and one year for tampering. The possession, improper-handling, and tampering sentences are to be served concurrently to each other and consecutive to the

weapons-under-disability sentence.

{¶ 5} Clark appealed and now presents four assignments of error for our review.

## II. Analysis

### A. *Allied offenses of similar import*

{¶ 6} The first assignment of error alleges that the trial court erred by not merging the weapons-under-disability and improper-handling offenses for sentencing purposes.

{¶ 7} R.C. 2941.25 codifies the double-jeopardy protection from multiple punishments for the same offense. Division (A) of the statute allows only one conviction for conduct that constitutes "allied offenses of similar import." R.C. 2941.25(A). But division (B) allows multiple convictions if any one of the following is true: "(1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 13. The merger analysis "focus[es] on the defendant's conduct to determine whether one or more convictions may result, because an offense may be committed in a variety of ways and the offenses committed may have different import." *Id.* at ¶ 30.

{¶ 8} Here, Clark contends that the weapons-under-disability and improper-handling offenses are allied offenses of similar import because they were committed as one brief act, with one animus. But on facts similar to those here, we have held that these two offenses are committed with different conduct, at different times, and with separate animuses. In *State v. Wilcox*, 2d Dist. Clark No. 2013-CA-94, 2014-Ohio-4954, we said that the defendant "committed the offense of having weapons while under disability when he (necessarily) acquired the gun before he got into the SUV." *Wilcox* at ¶ 20. And we

said that the defendant "committed the improper-handling offense when he brought the gun into the SUV." *Id.* Given the time sequence of the separate acts in *Wilcox*, we concluded that the offenses did not merge. *Compare State v. Fairman*, 2d Dist. Montgomery No. 24299, 2011-Ohio-6489, ¶ 67 (concluding that the offender's convictions for having a weapon under disability and for felonious assault merged when the same weapon was used to commit both offenses and there was evidence that the offender had "obtained the gun with the immediate intent of shooting" the victim).[1]

{¶ 9} The facts here require the same conclusion as in *Wilcox*, though the sequence of acts here is in reverse order. Given that Clark was found guilty of the improper-handling offense, the jury must have concluded that he had the handgun while in the vehicle. That constituted the improper-handling offense. Thereafter, Clark also had possession of the weapon, under the disability, while he fled outside of the vehicle. This separate act and intent constituted the weapon-under-disability offense. The trial court was correct not to merge these two offenses.

{¶ 10} The first assignment of error is overruled.

B. *The evidence supporting improper handling*

{¶ 11} The second assignment of error alleges that there is insufficient evidence to support Clark's conviction for improper handling of a firearm in a motor vehicle. Clark also asserts that the conviction is contrary to the manifest weight of the evidence.

{¶ 12} In a sufficiency challenge, "the relevant inquiry on appeal is whether any

---

[1] The author of the present opinion dissented in *Fairman* on the merger issue, stating that "the two offenses are committed by different acts. Fairman acquired the disability that prevents him from having a firearm by committing a felony of violence long before he used a firearm to shoot Tremayne Arnold. That separate act is unrelated to the Felonious Assault." *Fairman* at ¶ 87 (Hall, J., dissenting in part).

reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. In other words, an appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991). In reviewing the weight of the evidence, " '[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

{¶ 13} Clark's argument focuses on the factual question of whether he was in the SUV. Clark testified at trial that when the police stopped the SUV he was not inside. Clark said that he was merely talking to the driver through the front passenger-side window. But Officer Elliott testified that "the front passenger door of the Tahoe c[a]me open and the Defendant in this case runs from the vehicle on foot carrying a black bag." (Trial Tr. 235). And Officer Nichols testified that, from his vantage point, he "could see a passenger door open and then shut." (*Id.* at 144).

{¶ 14} The police officers' testimony is sufficient to convince the average mind that Clark was in the SUV. And we cannot say that the jury clearly lost its way by believing the police officers' testimony over Clark's testimony. Therefore the conviction for improper handling is supported by sufficient evidence and is not contrary to the weight of the

evidence.

{¶ 15} The second assignment of error is overruled.

### C. *The evidence supporting heroin possession*

{¶ 16} The third assignment of error alleges that the evidence is insufficient to support Clark's conviction for heroin possession because the evidence does not show that Clark knew what was in the black bag.

{¶ 17} To find Clark guilty of drug possession, the State had to prove that he "knowingly" possessed the heroin in the bag. R.C. 2925.11(A). Clark argues that there is no evidence that he knew heroin was in the bag. He says that his flight from the SUV is not enough to permit an inference of this knowledge. But Clark not only fled from the SUV but also carried with him the bag containing the heroin and then tried to hide the bag in a trash can. These three facts are enough for the jury to have inferred that Clark knew about the heroin.

{¶ 18} The third assignment of error is overruled.

### D. *Sentencing*

{¶ 19} The fourth assignment of error alleges that the State improperly argued at the sentencing hearing that Clark was a drug dealer.

{¶ 20} At sentencing, the trial court asked the State if it wanted to put anything on the record. The prosecuting attorney noted that the State had included in the presentence investigation report text messages found in Clark's cell phone, which were not used at trial. "The messages," said the prosecuting attorney, "seemed to portray that the Defendant brought heroin possibly to sell to Brian DeArmond [the driver of the SUV from which Clark fled]." (Disposition Tr. 5). The court then gave defense counsel the

opportunity to speak. Defense counsel told the court, "I think it's disingenuous of the State of Ohio now to claim at this point that the narcotics and the weapon that were found in the trash can were Jeremy's. I believe at trial they argued that it didn't matter how long he held it, even if it was someone else's, I believe they specifically mentioned Mr. DeArmond's name." (*Id.* at 6).

{¶ 21} Clark argues here that the drug-dealer remarks are improper because they are inconsistent with the theory of the case that the State presented at trial. Clark also says that the State attempted to inflame the court at sentencing by incorporating the text messages that suggest that Clark is a drug dealer.

{¶ 22} At a sentencing hearing, "the offender, the prosecuting attorney, the victim or the victim's representative * * * may present information relevant to the imposition of the sentence in the case." R.C. 2929.19(A). "[A] trial court may rely on 'a broad range of information' at sentencing." *State v. Bodkins*, 2d Dist. Clark No. 10-CA-38, 2011-Ohio-1274, ¶ 43, quoting *State v. Bowser*, 186 Ohio App.3d 162, 2010-Ohio-951, 926 N.E.2d 714, ¶ 13 (2d Dist.). " 'The evidence the court may consider is not confined to the evidence that strictly relates to the conviction offense because the court is no longer concerned * * * with the narrow issue of guilt.' " *Id.*, quoting *Bowser* at ¶ 14. The State's theory of the case at trial is not a limiting factor at sentencing. To prove guilt, the State did not have to prove that Clark was the owner of the heroin he possessed, or that he was likely to sell it, so it chose not to. Nothing prevents the State from presenting evidence at sentencing that the heroin he possessed was actually his, rather than the driver's, or that Clark intended to sell it. This is particularly so when the volume alone, almost 50 grams, could raise a reasonable inference that Clark was not just a casual user. In the final analysis, the State

was simply presenting evidence for the trial court to consider as it was entitled to do.

{¶ 23} We need not determine whether the information the State provided was inflammatory. "As a matter of law, a reviewing court presumes that a judge will consider only relevant, material, and competent evidence. *State v. Post*, 32 Ohio St.3d 380, 384 (1987). Thus absent evidence that the trial court improperly considered any improper evidence, the judgment will not be reversed. *State v. Simko*, 71 Ohio St.3d 483, 491 (1994)." *State v. Kline*, 3d Dist. Henry No. 7-12-03, 2012-Ohio-4345, ¶ 8. Here, there is no evidence that even if the text messages were inflammatory, they affected the sentence. The trial court never referred to the text messages. What the court did say was that "the amount of heroin that was possessed in this case, along with possession of a semiautomatic firearm with a magazine capable of holding 30 rounds of ammunition, the ammunition also being within would indicate to the Court the Defendant was involved in an offense for hire or part of an organized criminal activity." (Disposition Tr. 8-9). So it appears that the facts, other than the text messages, presented by the State led the court to believe that Clark sold drugs. Without a showing of prejudice, there is no error.

{¶ 24} Clark cites this Court's majority opinion in *State v. Adams*, 2d Dist. Clark No. 2014-CA-13, 2015-Ohio-1160 (Hall, J., dissenting), a case in which the defendant was convicted of, among other offenses, heroin possession. At sentencing, the prosecuting attorney told the trial court that based on phone records the State believed that the defendant sold heroin. The majority in *Adams* found inflammatory the reference to phone records and the suggestion that the defendant sold heroin. The facts in *Adams* differ so markedly from those here that we do not think the case is helpful.

{¶ 25} The fourth assignment of error is overruled.

### III. Conclusion

{¶ 26} We have overruled all of the assignments of error presented. The trial court's judgment is therefore affirmed.

. . . . . . . . . . . . .

FROELICH, J., and WELBAUM, J., concur.

Copies mailed to:

Megan M. Farley
Jon Paul Rion
Nicole Rutter-Hirth
Hon. Richard J. O'Neill