OPINION *Page 2 
{¶ 1} Defendant-appellant Charlie Preston Swanigan appeals his conviction and sentence entered by the Richland County Court of Common Pleas. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On September 13, 2007, Appellant was charged in the Mansfield Municipal Court with one count of rape, in violation of R.C. 2907.02. Appellant waived his right to a preliminary hearing, and was bound over to the Richland County Court of Common Pleas.
 {¶ 3} On October 11, 2007, Appellant was indicted by the Richland County Grand Jury on four counts of rape, in violation of R.C. 2007.02(A)(1)(b), and one count of attempted gross sexual imposition, in violation of R.C. 2907.05(A)(4) in violation of R.C. 2923.02(A). The charges stemmed from allegations Appellant engaged in inappropriate conduct with three young children at his residence.
 {¶ 4} Following a motion by counsel, the trial court ordered Appellant evaluated at District V Forensic Diagnostic Center by Dr. Dale Rupple, Ph.D. The parties stipulated to the report. Via Judgment Entry of January 14, 2008, the trial court found Appellant competent to stand trial.
 {¶ 5} On January 2, 2008, Appellant filed a motion in limine to exclude his statements made during an interview with the Ontario Police Department.
 {¶ 6} On January 4, 2008, Appellant filed a motion in limine seeking to exclude any testimony of the alleged female victims to a third party regarding the alleged sexual *Page 3 
conduct, unless the females testify at trial pursuant to Crawford v.Washington (2004), 541 U.S. 36.
 {¶ 7} The matter proceeded to trial on January 17, 2008. The trial court redacted that portion of the videotaped interview of Appellant indicating a suspicion Appellant committed a prior sex offense, and allowed the statements of the four and eight year-old victims to the nurse at the time of the forensic evaluation.
 {¶ 8} On January 23, 2008, the jury returned a verdict of guilty to three of the rape charges pertaining to J.H., a child less than ten, and found Appellant guilty of the lesser included offense of gross sexual imposition as to the fourth rape count relative to H.A., a child less than ten years of age. The jury further found Appellant guilty of attempted gross sexual imposition relative to K.W., a child less than thirteen years of age.
 {¶ 9} Appellant now appeals, assigning as error:
 {¶ 10} "I. THE TRIAL COURT ERRED PREJUDICIALLY BY REFUSING TO LIMIT THE PRESENTATION OF THE STATE'S EVIDENCE REGARDING STATEMENTS MADE BY THE ALLEGED CHILD VICTIMS TO THIRD PERSONS.
 {¶ 11} "II. APPELLANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL WHERE THE COURT-APPOINTED ATTORNEY FAILED TO MOVE TO SUPPRESS THE INTERROGATION OF THE APPELLANT, THUS NECESSITATING THE APPELLANT TO TESTIFY IN HIS OWN BEHALF THAT HIS ADMISSIONS AND CONFESSIONS WERE NOT TRUE.
 {¶ 12} "III. THE SENTENCE IS UNCONSCIONABLE AND SHOULD BE REDUCED." *Page 4 
 I {¶ 13} In the first assignment of error Appellant argues the trial court erred in allowing the testimony of S.A.N.E. (Sexual Abuse Nurse Examiner) forensic nurses relative to statements made by the child victims.
 {¶ 14} Specifically, Appellant asserts the statements of the child victims to the nurses constitutes testimonial hearsay prohibited byCrawford v. Washington (2004), 541 U.S. 36. In Crawford, the United States Supreme Court held statements made out-of-court that are testimonial in nature are barred by the Confrontation Clause, unless the witness is available to testify or the defendant had an opportunity to cross-examine the witness. Crawford v. Washington, 541 U.S. 36, 68,124 S.Ct. 1354, 158 L.Ed.2d 177. Therefore, in order to rule on the defendant's motion, the court must answer the threshold question of whether the statements made by the alleged victims were testimonial.
 {¶ 15} "For Confrontation Clause purposes, a testimonial statement includes one made `under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" State v. Stahl, 111 Ohio St.3d 186,2006-Ohio-5482, 855 N.E.2d 834, paragraph one of the syllabus, quotingCrawford v. Washington, 541 U.S. at 52, 124 S.Ct. 1354, 158 L.Ed.2d 177. "In determining whether a statement is testimonial for Confrontation Clause purposes, courts should focus on the expectation of the declarant at the time of making the statement; the intent of the questioner is relevant only if it could affect a reasonable declarant's expectations." Id. at paragraph two of the syllabus. *Page 5 
 {¶ 16} The state argues in response the statements were not testimonial in nature; rather, the statements made by the alleged victims were made for purposes of medical diagnosis or treatment under Evid. R. 803(4) and, therefore, do not violate the Confrontation Clause. The state cites the Ohio Supreme Court decision in State v. Muttart
(2007), 116 Ohio St.3d 5:
 {¶ 17} "We hold that regardless of whether a child less than ten years old has been determined to be competent to testify pursuant to Evid. R. 601, the child's statements may be admitted at trial as an exception to the hearsay rule pursuant to Evid. R. 803(4) if they were made for purposes of medical diagnosis or treatment. Ferrell v. Ferrell (Mar. 14, 1986), Huron App. No. H-84-39, 1986 WL 3252, *3.
 {¶ 18} "***
 {¶ 19} "In cases in which a statement was made for purposes of medical diagnosis or treatment, the question is not whether the statement is reliable; the presumption is that it is. The salient inquiry here is not A.M.'s competency but whether her statements were made for purposes of diagnosis and treatment rather than for some other purpose."[1]
 {¶ 20} We find the statements made by the child victims to the SANE nurses in the case sub judice were not testimonial in nature. Again, under Crawford, in deciding whether the testimony is admissible, the trial court must look to the expectation of the declarant, not the questioner, in making the statement. *Page 6 
 {¶ 21} Upon review of the record, the statements made by the child victims were made to the nurses for purposes of medical diagnosis and treatment. Nurse Jodie Flynn testified at trial relative to her examination and treatment of Jade:
 {¶ 22} "Q. How does it work? Do you discuss? Let's say a child is brought into the emergency room. Somebody has requested that child receive a S.A.N.E. exam. Do you discuss with the patient, the child patient what is going to happen? How do you end up doing the actual examination?
 {¶ 23} "A. We first will convene in the — — what I consider a preconference. I will have the child and whoever brings them into the emergency department, whether it is a parent or a caregiver, a guardian, and I will discuss with them what is a medical forensic evaluation or a S.A.N.E. exam. So we will discuss that with a child and the caregiver who brings them in. And I just will tell them I don't want to know any information in regards to why they are there, besides I do need to know if it is an acute versus non-acute, and ask, you know, some basic medical/past surgical history, those types of things, you know, look at the triage nurse would have done some vital signs, things like that to look at stability before the S.A.N.E. nurse would get there.
 {¶ 24} "I would discuss with the child, you know, what we are going to do. We are going to look you over from head-to-toe, make sure there are no injuries, boo-boos, language appropriate for the age. And it is important to let them know we are going to do a detailed genital exam or look at their private parts or whatever name they are going to deem that. When we discuss, we have a conversation one-on-one, and that it is okay that we are going to be able to do that, because your caregiver is aware and it is no secret, and any time if you get upset, you know, we will come and get your loved one or *Page 7 
those things. So we take that approach and that they are going to learn a lot about their bodies that day.
 {¶ 25} "Q. And why is it important that you don't know the details going in; that when you get this child, you don't want to know what happened? You don't want mom, dad, cousin, aunt, uncle, officer, whoever brings the child to you, you don't want to know what the allegations are? Why is that important?
 {¶ 26} "A. It helps that we have a clear, open mind as we are going into it. It helps out. You know, you don't ask any leading questions or anything like that. We go into it with a very open approach. We will talk with the child, then seek further clarification with the caregiver as needed.
 {¶ 27} " * * *
 {¶ 28} "Q. Says, `Narrative History (in patient's own words). Can you tell the jury what J. told you regarding what Charlie did to her?
 {¶ 29} "A. Yes. Patient states, in quotes: `Charlie touched me, my Aunt Crystal's boyfriend. It was in the living room on the couch. Charlie touched me with his hands on me (she points to her female genitalia) my private. In my underwear. It was nighttime, and he said keep it a promise. Felt sad, and it hurt when touched me. S.A.N.E. asked patient, or asked patient — — `
 {¶ 30} "Q. Which would be you?
 {¶ 31} "A. Which would be me. `Was this the only time he touched you?' Patient stated, `No, I was in first grade, too.'
 {¶ 32} "Q. And you would have gotten this information just from asking her, tell me what happened? Is that the question? *Page 8 
 {¶ 33} "A. Yes.
 {¶ 34} "Q. Okay. And she said in your narrative, she talks about hands, but on the page before, you actually show her saying it was in fact fingers, so it would be, you tell me, which did she say, or say both?
 {¶ 35} "A. First what we do is just talk. And I get a history from her. Then I will clarify some of the other terms on page 1 if I need further clarification of the history.
 {¶ 36} "Q. So did she clarify `hand' to say it was actually his `fingers'?
 {¶ 37} "A. Yes, that is correct.
 {¶ 38} "Q. And is there anything important based on your training, education, and experience as a S.A.N.E. nurse that she said, "It hurt when touched me"? What significance based on your training, experience, would that be — — that it hurt?
 {¶ 39} "A. Based on my training and experience, when they indicate something has hurt them, most often with a child, it is that they have penetrated and they have touched her hymen.
 {¶ 40} "Q. Okay. Why is — — why would you make that conclusion based on that statement based on your training and experience?
 {¶ 41} "A. Because the hymen is very tender to touch with a prepubescent child, because just the nature of the sensitivity of that area in the genitalia."
 {¶ 42} Tr. At 149-151; 175-177.
 {¶ 43} Nurse Deann Wendling, also a S.A.N.E. nurse, testified at trial relative to her examination and treatment of H.A., age four. Nurse Wendling testified: *Page 9 
 {¶ 44} "Q. Okay. All right. Now, can you also, again, so we can just go over this one more time. They have already heard. You mentioned these different steps. The first one, I believe you said is, what, the history? Is that what you do?
 {¶ 45} "A. We do a complete head-to-toe evaluation.
 {¶ 46} "Q. Okay. You go ahead and take us through. Is that the first one that you do?
 {¶ 47} "A. Yes.
 {¶ 48} "Q. All right. Take us through the steps.
 {¶ 49} "A. A head-to-toe evaluation, just to check, treat for any trauma, illness or whatever; then we do a history, ask the patient why they are there; then we do a detailed genitalia exam, which we use a special machine that magnifies everything 30 times the naked eye; and then we collect evidence as we are going."
 {¶ 50} "* * *
 {¶ 51} "Q. Okay, now, drawing your attention to August 17, 2007, did H.A. report to the MedCentral Hospital Mansfield as far as you are aware of?
 {¶ 52} "* * *
 {¶ 53} "A. Yes, sir.
 {¶ 54} "* * *
 {¶ 55} "A. Observations: Patient presents to MedCentral Health System Forensic Nursing Program for a medical/forensic evaluation. Parents state H. disclosed that `Charlie' touched her `monkey' (mom states that that is what H. calls female genitalia) while she was taking a bath. Safety issues addressed with parents, child will have no *Page 10 
further contact with `Charlie.' For patient history please see medical forensic documentation."
 {¶ 56} "Q. All right. And that is what this exhibit is, page 9 of this 17-page document, this is actually a referral to Richland County Children Services to get them involved in this case?
 {¶ 57} "A. Correct.
 {¶ 58} "* * *
 {¶ 59} "A. She told me she was touched, female genitalia touched through clothes. That is not how she said it, but I will get to that later. It is on my chart later.
 {¶ 60} "* * *
 {¶ 61} "Q. One more time here, can you tell us the significance of why you decided to take a narrative history from your patient, who is H., and have her use her own words? Why is that important?
 {¶ 62} "A. Because that is — — when we talk to them, we want to put it down just as they state it, how they felt, what went down.
 {¶ 63} "Q. Okay. And did you actually make notes of that while she was speaking to you or immediately thereafter? How does that go? You just write when she is talking to you?
 {¶ 64} "A. We write when they are talking to us.
 {¶ 65} "Q. Okay. Why don't you go ahead and read from your chart, page 13, the narrative history in the patient's own words, using, I guess, her quotes?
 {¶ 66} "A. Okay. Patient states, quote, `Charlie touched my pee-pee,' quote. Patient pointed to female genitalia for this RN. Quote, `He touched me with his hands,' *Page 11 
quote. Patient states clothes were on. Quote, `He put me on the table then on the couch, he put me on the couch by Crystal. He touched me on the couch,' unquote. That was all she said."
 {¶ 67} Tr. at 231-232; 242; 247; 249-250.
 {¶ 68} Based upon the testimony and record, we find the trial court did not abuse its discretion in allowing the statements as non-testimonial statements made for the purpose of medical diagnosis or treatment. The expectation of the declarant at the time was to receive medical treatment, not that the statement would later be available for trial. The Supreme Court has decided in State v. Muttart, supra, the statement is admissible as an exception to the hearsay rule.
 {¶ 69} The first assignment of error is overruled.
 II. {¶ 70} In the second assignment of error, Appellant argues his trial counsel was ineffective in failing to move the trial court to suppress Appellant's statements made during his interview with Detective Kalb.
 {¶ 71} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373. In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. *Page 12 Bradley at 142, 538 N.E.2d 373. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists counsel's conduct fell within the wide range of reasonable professional assistance. Id.
 {¶ 72} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." State v. Carter (1995), 72 Ohio St.3d 545, 558,651 N.E.2d 965, citing Lockhart v. Fretwell (1993), 506 U.S. 364, 370,113 S.Ct. 838, 122 L.Ed.2d 180.
 {¶ 73} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143,538 N.E.2d 373, quoting Strickland at 697.
 {¶ 74} The failure to file a suppression motion does not constitute per se ineffective assistance of counsel. Kimmelman v. Morrison (1986),477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305. Failure to file a motion to suppress constitutes ineffective assistance of counsel only if, based on the record, the motion would have been granted. State v.Butcher, Holmes App. No. 03 CA 4, 2004-Ohio-5572, ¶ 26, citing State v.Robinson (1996), 108 Ohio App.3d 428, 433, 670 N.E.2d 1077.
 {¶ 75} Appellant asserts counsel should have moved the trial court to suppress the statements made during the interview as he could not appreciate the nature of his *Page 13 
circumstance at the police interview due to his recent head injury following a car accident and his limited educational background and academic achievement.
 {¶ 76} The record reveals trial counsel moved the trial court for a competency evaluation prior to trial. The competency evaluation demonstrated Appellant understood the legal process and the charges against him. Further, the evaluation concluded Appellant was able to assist in his own defense.
 {¶ 77} Upon review, Appellant has not demonstrated a reasonable probability a motion to suppress his statements would have been granted based upon the record before us. Accordingly, Appellant has not demonstrated prejudice as a result of any alleged deficiency in representation, and his second assignment of error is overruled.
 III. {¶ 78} In the third assignment of error, Appellant argues the sentence imposed by the trial court is unconscionable and should be reduced.
 {¶ 79} In State v. Foster, 109 Ohio St.3d 1, 845 N.E.2d 470,2006-Ohio-856, the Ohio Supreme Court vested trial courts with full discretion in sentencing. An abuse of discretion implies the court's attitude is "unreasonable, arbitrary or unconscionable." State v.Adams (1980), 62 Ohio St.2d 151, 404 N.E.2d 144.
 {¶ 80} In Foster, supra, the Ohio Supreme Court found the presumption for the shortest prison term only existed if the trial courts were free to overcome the presumption based upon the offender's history or the particular facts of the case. Id. at ¶ 96, 845 N.E.2d 470; State v.Randolph (November 24, 2008) Morrow Co. App. No. 2008-CA-2. "The natural corollary to this finding is that the legislature never mandated *Page 14 
a mandatory minimum sentence upon every offender who had not previously served a prison term." State v. Paynter, supra at ¶ 38; State v.Goggans, supra, at ¶ 20.
 {¶ 81} A trial court is vested with discretion to impose a prison term within the statutory range. See State v. Mathis, 109 Ohio St.3d 54,846 N.E.2d 1, 2006-Ohio-855 at ¶ 36. Appellate courts can find an "abuse of discretion" where the record establishes that a trial judge refused or failed to consider statutory sentencing factors. Cincinnati v.Clardy (1978), 57 Ohio App.2d 153, 385 N.E.2d 1342; State v.Goggans, supra, at ¶ 32. An "abuse of discretion" has also been found where a sentence is greatly excessive under traditional concepts of justice or is manifestly disproportionate to the crime or the criminal.Woosley v. United States (1973), 478 F.2d 139, 147. The imposition by a trial judge of a sentence on a mechanical, predetermined or policy basis is subject to review. Woosley, supra at 143-145. Where the severity of the sentence shocks the judicial conscience or greatly exceeds penalties usually exacted for similar offenses or defendants, and the record fails to justify and the trial court fails to explain the imposition of the sentence, the appellate court's can reverse the sentence.Woosley, supra at 147. This by no means is an exhaustive or exclusive list of the circumstances under which an appellate court may find that the trial court abused its discretion in the imposition of sentence in a particular case. State v. Firouzmandi, supra at ¶ 56; State v.Goggans, supra, at ¶ 32.
 {¶ 82} Here, there is no evidence in the record the trial court acted unreasonably. Rather, the record demonstrates Appellant committed sexually based crimes against three young children. At the sentencing hearing, the trial court stated on the record: *Page 15 
 {¶ 83} "The Court: Mr. Swanigan, you have been an extremely foolish young man. I am now finding out for the first time that you have a prior history of imposing yourself on young girls. Not so young as you picked out this time, you picked out a four year old and an eight year old, and a twelve year old besides, to sexually molest.
 {¶ 84} "Kids are supposed to have an opportunity to be children. I know that's hard enough in our society with the way the media is, the videos, music, everything else, television even there's a lot of sex in your face. But kids are supposed to have the opportunity to be kids, but they are especially supposed to have it free from the imposition of people like you. So I don't know what your thinking was except that it was extraordinarily foolish, and extraordinarily criminal.
 {¶ 85} "In addition, you did lie on the stand under oath. And now I am finding out that this is not the first time you have been involved in this kind of activity. That suggests you need the most serious form of penalty, doesn't it?
 {¶ 86} "The Defendant: Yes.
 {¶ 87} "The Court: You are a nineteen-year-old man. What a waste this is, that you throw your life away in this way, what a waste it is.
 {¶ 88} "Will counsel approach, please?
 {¶ 89} "Thereupon, there was a bench conference held off the record.
 {¶ 90} "The Court: Mr. Swanigan, you are obviously in no condition now to be back in society. You need to be sent away for a long time. *Page 16 
 {¶ 91} "I am sentencing you on count 1 to ten years to life in prison; Count 2, fifteen years to life in prison; Count 3, fifteen years to life in prison; Count 4, five years in prison; Count 5, a year and a half in prison.
 {¶ 92} "I find you to be a Tier 3 sex offender, subject to five years Post Release Control and a lifetime registration.
 {¶ 93} "I am making counts 1, 2, and 3 consecutive to each other, the others are concurrent."
 {¶ 94} Sentencing Hearing Tr. at 7-8.
 {¶ 95} Upon review, the sentence imposed is within the statutory range allowable, and the trial court was not required to state the reason for said sentence. Accordingly, we do not find the trial court abused its discretion in sentencing Appellant.
 {¶ 96} The third assignment of error is overruled.
 {¶ 97} Appellant's convictions and sentence in the Richland County Court of Common Pleas are affirmed.
Hoffman, P.J., Wise, J. and Delaney, J. concur *Page 17 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, Appellant's convictions and sentence in the Richland County Court of Common Pleas are affirmed. Costs to Appellant.
[1] Though we may have reservations about finding the competency of the two child victims irrelevant given their ages, we do find their statements were given for the purpose of diagnosis and treatment; therefore, admissible under Muttart. *Page 1