[Cite as *Buy Rite Office Prods., L.L.C. v. Evans*, 2013-Ohio-824.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98647**

# BUY RITE OFFICE PRODUCTS, L.L.C.

PLAINTIFF-APPELLEE

vs.

# RICHARD EVANS

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Shaker Heights Municipal Court
Case No. 11 CVF 00927

**BEFORE:** Boyle, J., Stewart, A.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** March 7, 2013

**ATTORNEY FOR APPELLANT**

James R. Flaiz
Carrabine & Reardon Co., L.P.A.
7445 Center Street
Mentor, Ohio    44060


**ATTORNEY FOR APPELLEE**

Loren Gordon
850 Euclid Avenue
Suite 1013
Cleveland, Ohio    44114

MARY J. BOYLE, J.:

**{¶1}** Defendant-appellant, Richard Evans, appeals from the trial court's decision finding in favor of plaintiff-appellee, Buy Rite Office Products, L.L.C., on its breach of contract claim. He raises a single assignment of error:

> The trial court erred when it found Defendant-Appellant personally liable for repayment of funds received from a drawing account.

**{¶2}** Finding no merit to the appeal, we affirm.

Procedural History and Facts

**{¶3}** Buy Rite filed the underlying action in Shaker Heights Municipal Court, seeking to collect from Evans $2,400 that it had advanced to him under an employment relationship but had not received repayment. The matter proceeded to a bench trial where the following evidence was presented.

**{¶4}** Buy Rite sells office supplies, office furniture, and janitorial supplies. Michelle Ryb, owner of Buy Rite, testified that the first time she discussed a sales position with Evans he turned it down because he could not take "an all commissioned sales job" at that time. He later approached Ryb again about the job, asking if there were any openings or arrangements that could be made to have him work for Buy Rite. Ryb testified that she liked Evans and wanted to help him. She told him that the job was commissioned sales but offered to advance him $600 a week. Ryb explained the arrangement as follows:

**{¶5}** "So we worked out that I would pay him $600 a week and he would begin selling and he knew that he owed that back to me, because in no way, shape, or form was I in a position to pay that out without sales coming in."

**{¶6}** Evans received two checks from Buy Rite, signed by Ryb, totaling $2,400 for a two-month period. Evans never reported any sales and never repaid the money. According to Ryb, Evans ultimately informed her, shortly after receiving the second payment of $1,200, that he was ill and unable to work, resulting in the termination of his employment.

**{¶7}** On May 14, 2010, Evans sent Ryb an email expressing remorse over how things ended while indicating that he "would make up for the draw with sales or will pay you back somehow." In June 2011, Ryb received another email from Evans, stating that he felt she was harassing him for the repayment and informing her to communicate with him only through emails. He further indicated that, although he told her months ago that he felt "horrible and would try to repay," he was no longer interested because she started harassing him. Buy Rite offered both emails into evidence as exhibits C and D.

**{¶8}** On cross-examination, Ryb denied that she ever offered Evans a "draw" against future commissions. She testified that she does not operate on a draw system but acknowledged that she answered an interrogatory as to the employment relationship, stating that "[Evans] offered to take a draw $600 per week against commission." She testified that she understood "draw" to be a different meaning than that being implied by Evans's counsel, i.e., not one limited to be paid by commissions from future sales.

**{¶9}** Evans did not present any witnesses at trial but submitted a single exhibit in support of his defense, i.e., Buy Rite's responses to the interrogatories, which included Ryb's statement that the employment agreement consisted of Evans taking "a draw of $600.00 per week against commission."

**{¶10}** The trial court ultimately found in Buy Rite's favor, awarding it "$2,400 with interest at 3% per annum from the date of judgment and costs" against Evans. In reaching this decision, the trial court noted the following:

> [T]he testimony of the Plaintiff's President indicates to the court that, while termed a "draw," the parties understood that such was not actually the case. Defendant's correspondence to Plaintiff confirms that he felt repayment was part of the bargain. The court finds upon the uncontroverted testimony of the Plaintiff and the comments contained in Exhibits C & D, the plaintiff has overcome the case law presumption and Defendant is personally liable for repayment of funds.

**{¶11}** Evans now appeals that judgment, raising one assignment of error.

## Governing Law

**{¶12}** In his sole assignment of error, Evans argues that the trial court erred in finding him personally liable on payments made under a drawing account. He argues that Ohio law does not impose personal liability under such an arrangement and that the emails sent by Evans did not alter the parties' oral contract. We find Evans's arguments to lack merit.

**{¶13}** While it is true that "Ohio law presumes that the repayment of a drawing account must come from the commissions only, without personal liability," this presumption may be overcome "by proof of an agreement that the advances shall

constitute personal indebtedness." *Dore v. McCluskey*, 2d Dist. No. 95CA16, 1995 Ohio App. LEXIS 4959 (Nov. 8, 1995), citing *Bade v. Duffy*, 57 Ohio App.2d 170, 171-172, 385 N.E.2d 1346 (1st Dist.1978). Indeed, this court has previously recognized that "an employer and employee may enter into an agreement whereby the employee is paid on commission and is personally liable for advances exceeding earned commission." *School Specialty v. Race*, 8th Dist. No. 83292, 2004-Ohio-1271, ¶ 16.

{¶14} In *Bade*, the court explained the governing law of repayment of a drawing account as follows:

> * * * the presumption is that the repayment of a drawing account must come from the commission only, without personal liability, even though such words as "advance," "loan" or "draw" are used. This presumption may be overcome by an express, written agreement that the advances shall constitute the personal indebtedness of the employee. Such an agreement may also be proved by other types of evidence, including testimony of oral understandings and the use of reasonable inferences from circumstantial evidence.

(Citations omitted.) *Id.* at 172.

{¶15} The issue in this case, therefore, is whether there was sufficient evidence to allow the trial court to reasonably conclude that the parties agreed that the $2,400 advances constituted the personal indebtedness of Evans. We find that the record contains exactly that. Indeed, Ryb testified that the parties agreed that Evans would repay the $600 that Buy Rite fronted each week. She further testified that Evans knew that he had to pay back the money. Ryb testified as to the parties' understanding that she could not afford to do "draws," and that the money was "something to get him started because he had a family to feed." Ryb's testimony, coupled with the two emails in which

Evans acknowledges owing the debt, supported the trial court's finding that the parties' understood and agreed that Evans was personally liable for repayment of the funds.

{¶16} Notably, Evans did not offer any witnesses to refute Ryb's testimony. The only evidence that Evans presented to support his defense was Buy Rite's responses to the interrogatories, including Buy Rite's description of the parties' oral contract as follows: "Richard agreed to $600.00 draw a week against commission rate of 40% of the profit of sales." Ryb, however, testified as to what she meant by "draw," which included repayment from Evans, and not in the manner that Evans's counsel implied.

{¶17} Evans points to a single response of Ryb's on cross-examination in support of his claim that she understood that repayment would be from commissions only, thereby negating personal liability. But we find his argument misplaced. Ryb's testimony must be considered in its entirety, including her other testimony wherein she stated that the parties understood that Evans was liable to repay the funds — and not just simply from future commissions. Further, any contradicting testimony is left to the trier of fact to resolve. *See Midstate Educators Credit Union, Inc. v. Werner*, 175 Ohio App.3d 288, 2008-Ohio-641, 886 N.E.2d 893, ¶ 35 (10th Dist.).

{¶18} We find that Buy Rite presented sufficient evidence and proved by a preponderance of the evidence that Evans expressly or impliedly promised to repay the funds as part of the oral employment agreement. *See ESI Mtge. Corp. v. Rich*, 8th Dist. No. 64822, 1994 Ohio App. LEXIS 815 (Mar. 3, 1994). Further, this court cannot reverse the judgment as being against the weight of evidence; the record contains

competent, credible evidence supporting the trial court's determination that the parties understood that Evans would be personally liable to repay the funds. *See C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280, 376 N.E.2d 578 (1978).

{¶19} Finally, to the extent that Evans argues that the trial court construed the emails as separate promises to repay the funds and thereby modifying the oral agreement, we disagree. Contrary to Evans's assertion, this was not the only evidence presented to support the trial court's finding that he was personally liable for the $2,400. Indeed, Buy Rite presented Ryb's testimony, which Evans never contradicted. We find that the emails merely corroborated Ryb's testimony, revealing Evans's understanding that he was personally liable for repaying the $2,400.

{¶20} The sole assignment of error is overruled.

{¶21} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

SEAN C. GALLAGHER, J., CONCURS;

MELODY J. STEWART, A.J., CONCURS IN JUDGMENT ONLY
WITH SEPARATE OPINION

MELODY J. STEWART, A.J., CONCURRING IN JUDGMENT ONLY:

{¶22} I agree with the outcome reached by the majority in this case. However, I do not find that the record clearly demonstrates the parties agreed that the $2,400 draw constituted a personal indebtedness.

{¶23} As the majority notes, Buy Rite's responses to discovery interrogatories state that Evans was given "a draw of $600.00 per week against commission" and describe the oral agreement between them as "Richard agreed to a $600.00 draw a week against commission rate of 40% of the profit of sales." These responses are not ambiguous. The answers clearly demonstrate that the parties' agreement was that of a drawing account where repayment comes from commissions with no contingent personal liability. Because the answers to the interrogatories were submitted after Buy Rite failed in its attempt to recoup the $2,400 from Evans, the absence of some indication of personal liability attaching is puzzling.

{¶24} During trial, Buy Rite presented emails Evans sent that stated he would pay back the draw with sales or pay it back somehow: that he would "try to repay." Although these statements demonstrate a willingness on Evans's part to attempt to repay the money, it is unclear whether he felt or understood that he had a legal obligation to do so. In addition, Buy Rite presented testimony that completely contradicted its discovery responses regarding the understanding of the agreement

terms. Although I do not find that weighing the evidence tilts so strongly in favor of Buy Rite as the trial court and majority find, because Evans presented no evidence that refuted Buy Rite's testimony and chose simply to rely on interrogatory responses that were explained away at trial, I cannot say that the trial court erred.