[Cite as *State v. Wilcox*, 2014-Ohio-4954.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CLARK   COUNTY

STATE OF OHIO       :

           :    Appellate Case No. 2013-CA-94

   Plaintiff-Appellee   :

           :    Trial Court Case No. 13-CR-457A

v.            :

           :

ROBERT WILCOX      :    (Criminal Appeal from

           :     Common Pleas Court)

   Defendant-Appellant  :

           :

. . . . . . . . . . .

# O P I N I O N

Rendered on the 7th day of November, 2014.

. . . . . . . . . . .

RYAN A. SAUNDERS, Atty. Reg. #0091678, Clark County Prosecutor's Office, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
   Attorneys for Plaintiff-Appellee

ANTHONY S. VANNOY, Atty. Reg. #0067052, 130 West Second Street, Suite 1624, Dayton, Ohio 45402
   Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1}     Robert Wilcox appeals from his convictions on six offenses, which netted him at total of 20.5 years in prison. He alleges that his trial counsel rendered ineffective assistance, that the trial court should have merged three offenses for sentencing purposes, that the convictions are against the manifest weight of the evidence, that the sentence is too long, that he should not have to serve the imposed terms consecutively, and that his conviction for tampering with evidence is not supported by sufficient evidence. Only in the last allegation do we find merit. We therefore reverse the tampering conviction and affirm the rest of the judgment.

## I. FACTS

{¶ 2}     Around 11 p.m. one evening in June 2014, Shadon McCoy picked up Wilcox in her SUV to get a drink. When Wilcox got in, McCoy asked him if he was "dirty," if he had any drugs on him. Wilcox did not answer, and McCoy did not pursue the matter. They first stopped at the house of one of McCoy's friends to see some puppies. She pulled up to the curb in front of the house and got out, leaving the vehicle running and Wilcox sitting in the passenger seat.

{¶ 3}     Springfield police officers Tyler Elliott and Deric Nichols were patrolling the area around the house, an area that had high drug and crime activity, in a police van. They passed McCoy's SUV and noticed the running engine and the passenger. They circled around the block, and as the vehicle came into view, they saw a woman leave the house in front of which it was parked and get into the vehicle. The SUV pulled away, and the officers decided to follow. At an intersection, they saw the SUV make a left turn without signaling, so the officers decided to make a traffic stop. As soon as the SUV started to pull over, one officer

turned on the police van's spotlight and pointed it at the vehicle. Both officers testified that they saw the passenger reach, or lean, way over toward the driver's side, appearing to go behind the driver's seat. The officers found this suspicious. As Officer Nichols said, "It's a high drug area. We've taken a lot of guns from that area; and to see someone reach over like that, it definitely seems suspicious." (Tr. 141). Officer Elliott testified that he thought that the passenger "could have been concealing something, which is a danger cue for [him]." (*Id*. at 224). The officers immediately got out of their van and approached the vehicle. Said Elliott, "[a]s the vehicle is coming to a stop, I'm seeing the passenger leaned over; and as soon as I got my patrol vehicle stopped, I get out and get up to the vehicle as quick as I could." (*Id*. at 211). Elliott took the driver's side, Nichols the passenger's.

{¶ 4}   Nichols and Wilcox "had a brief conversation and that was it." (*Id*. at 143). Nichols then went back to the police van to check for warrants and to start on the driver's citation. When he got into the van, Nichols called K-9 Officer Mike Fredendall and asked him to bring his dog to their location because of, as Nichols said, "the suspicions [he] had and everything during that night." (*Id*. at 145). Officer Fredendall arrived 15-20 minutes later. When Fredendall pulled up, Wilcox got out of the SUV and the dog went to work. Officer Elliott testified that Wilcox had sweat on his forehead and his eyes moved around quickly while the dog sniffed the vehicle. It did not take the dog long to alert on the passenger door. Nichols and Fredendall searched the vehicle and found in the glove box a clear softball-sized bag inside of which was 0.63 grams of crack cocaine and 94.99 grams of heroin, which had a street value of roughly $20,000. They also found a handgun under the driver's seat, toward the back-the area they earlier saw Wilcox reaching towards. Wilcox and McCoy were

arrested.

**{¶ 5}** Wilcox was charged with trafficking in heroin, *see* R.C. 2925.03(A)(2); possession of heroin, *see* R.C. 2925.11(A); tampering with evidence, *see* R.C. 2921.12(A)(1); having weapons while under disability, *see* R.C. 2923.13(A)(3); receiving stolen property, *see* R.C. 2913.51(A); improper handling of firearms in a motor vehicle, *see* R.C. 2923.16(B); and possession of cocaine, *see* R.C. 2925.11(A). All but the having-weapons-under-disability charge carried a firearm specification, *see* R.C. 2941.141. Wilcox did not move to suppress the drugs or handgun found in the SUV.

**{¶ 6}** McCoy took a plea deal to testify against Wilcox in exchange for a fifth-degree felony drug possession conviction. At his jury trial, she testified that, as the officers approached the SUV, Wilcox tried to give her a bag of drugs, but she pushed it back at him, refusing to take it. This bag, said McCoy, was the same bag that the officers found in the glove box. She testified that she did not see Wilcox put the bag into the glove box, nor did she see, or know about, the handgun until after police recovered it from her vehicle. McCoy also testified that while they were in the police van, after being arrested, Wilcox told her to stay quiet. She admitted that about three months before she and Wilcox were stopped she bought cocaine to sell.

**{¶ 7}** The jury found Wilcox guilty of all the charged offenses, and attached firearm specifications, with the exception of the charge of receiving stolen property (and its specification). The trial court merged the trafficking in and possession of heroin charges for sentencing purposes and the state elected to proceed on the trafficking charge. After imposing a prison term for each offense and each firearm specification, the court ordered Wilcox to

serve the specification terms concurrent to each other and consecuive to the other terms and to serve the other prison terms consecutively–a total prison sentence of 20.5 years.

**{¶ 8}** Wilcox appealed.

## II. ANALYSIS

**{¶ 9}** Wilcox assigns five errors to the trial-court proceedings. The first alleges that trial counsel rendered ineffective assistance. The second alleges that the trial court should also have merged the offenses of tampering with evidence, having weapons under disability, and improper handling of firearms in a motor vehicle. The third alleges that the convictions are against the manifest weight of the evidence. The fourth alleges that the sentence is too long and that the trial court should not have ordered him to serve the prison terms consecutively. The fifth alleges that the tampering-with-evidence conviction is not supported by sufficient evidence.

### A. The Claim of Ineffective Assistance of Counsel

**{¶ 10}** The first assignment of error alleges that Wilcox's trial counsel rendered him ineffective assistance by not filing a motion to suppress the drugs and handgun. "Claims of ineffective assistance of counsel are assessed against the two part test of *Strickland v. Washington* (1984) 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674." *In re Lakes*, 149 Ohio App.3d 128, 2002-Ohio-3917, 776 N.E.2d 510, ¶ 30 (2d Dist.). The claimant first must show that "counsel's performance was deficient." *Strickland* at 687. Then the claimant must show that "the deficient performance prejudiced the defense." *Id*.

**{¶ 11}** "The proper measure of attorney performance remains simply reasonableness under

prevailing professional norms." *Id.* at 688. The claimant must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955).

**{¶ 12}** Wilcox contends that there is a reasonable probability that the evidence found during the traffic stop would have been suppressed because the officers unreasonably prolonged the traffic stop to allow for the dog sniff. "[W]hen the search of a vehicle occurs during a reasonable period of time for processing a traffic citation, i.e., during a period of lawful detention, a police officer need not have a reasonable articulable suspicion of criminal behavior other than the traffic infraction." *State v. Ramos*, 155 Ohio App.3d 396, 2003-Ohio-6535, 801 N.E.2d 523, ¶ 12 (2d Dist.), citing *State v. Loffer*, 2d Dist. Montgomery No. 19594, 2003-Ohio-4980. We have said that a search is reasonable if it occurs within 20 minutes of a traffic stop. *See State v. Dewitt*, 2d Dist. Montgomery No. 23735, 2010-Ohio-6476, ¶ 45 (dog alerted less than 20 minutes after the traffic stop began, which is "within the normal amount of time for processing and issuing a traffic citation for a window tint violation"); *State v. Pryor*, 2d Dist. Montgomery No. 20800, 2005-Ohio-2770, ¶ 16 (dog sniff occurred about 20 minutes after traffic stop began, which "is not an unusual length of time for a traffic stop"). The length of a stop may lawfully be lengthened, however, if reasonable, articulable suspicion of criminal activity arises during the stop:

If during the initial detention to ask the contraband question, the officer ascertained reasonably articulable facts giving rise to a suspicion of criminal activity, the officer may then further detain and implement a more in-depth investigation of the individual. For example, at a sobriety checkpoint an officer who detects slurred speech would be justified in detaining the individual to perform a field test.

*State v. Robinette*, 80 Ohio St.3d 234, 241, 685 N.E.2d 762 (1997), citing *State v. Eggleston*, 109 Ohio App.3d 217, 671 N.E.2d 1325 (2d Dist.1996). We have concluded that a delay of 20-25 minutes for a drug sniff is justified if after the traffic stop a police officer obtains information that gives the officer "an enhanced suspicion of criminal activity." *State v. Rice*, 2d Dist. Miami No. 2013-CA-5, 2013-Ohio-5056, ¶ 2.

{¶ 13} Here, the evidence shows that the time between the initial stop and dog's arrival on the scene was 15-23 minutes and shows that the dog quickly got to work and quickly alerted on the SUV. The evidence also shows that the scope of criminal activity that the officers suspected when they decided to stop the SUV expanded after the stop was initiated. Both officers testified that when they saw the passenger lean over they suspected a weapon. Officer Nichols: "It's a high drug area. We've taken a lot of guns from that area; and to see someone reach over like that, it definitely seems suspicious." (Tr. 141). And Officer Elliott: "He went down to the point that he could have been concealing something, which is a danger cue for me." (*Id*. at 224). Indeed, Nichols agreed that he called the canine officer "because of the suspicions [he] had and everything during that night." (*Id*. 145).

{¶ 14} It is arguable here whether the dog sniff extended the traffic stop, and even if it did, the

extension was at most only a few minutes. We think that this very brief delay was reasonable under the totality of the circumstances and, more importantly, appellant has failed to demonstrate that it was unreasonable. *Compare Rice* at ¶ 22 (concluding that "the delay for the arrival of the drug sniffing dog was not unreasonable under the totality of the circumstances").

**{¶ 15}** "[T]he failure to file a suppression motion is not per se ineffective assistance." *State v. Slaughter*, 2d Dist. Montgomery No. 25270, 2013-Ohio-824, ¶ 19. "Failure to file a motion to suppress constitutes ineffective assistance of counsel only if, based on the record, the motion would have been granted." (Citation omitted.) *State v. Swanigan*, 5th Dist. Richland No. 08A19, 2009-Ohio-978, ¶ 74. "[T]he burden of proving ineffectiveness is on the defendant." *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). " 'Where the record contains no evidence which would justify the filing of a motion to suppress, the appellant has not met his burden of proving that his attorney violated an essential duty by failing to file the motion.' " *State v. Logan*, 8th Dist. Cuyahoga No. 88472, 2007-Ohio-2636, ¶ 66, quoting *State v. Gibson*, 69 Ohio App.2d 91, 95, 430 N.E.2d 954 (8th Dist.1980). If there is a strong indication that had a motion to suppress been filed it would have been overruled, the strong presumption that counsel's performance constituted reasonable assistance is not overcome, and counsel is not required to perform a futile act. *State v. Lodge*, 2d Dist. Greene No. 2004 CA 43, 2005-Ohio-1908, ¶ 26-27. The evidence here does not show that the traffic stop was unlawfully prolonged, so counsel might reasonably have thought that filing a motion to suppress on this basis would be futile. Moreover, Wilcox has failed to demonstrate prejudice,

that there is a reasonable probability that but for his counsel's failure to file the suppression motion, the result of the case would have been different.

**{¶ 16}** The first assignment of error is overruled.

## B. Merger

**{¶ 17}** The second assignment of error alleges that the trial court erred by not merging as allied offenses the offenses of tampering with evidence, having weapons while under disability, and improper handling of firearms in a motor vehicle. "[W]hen deciding whether to merge multiple offenses at sentencing pursuant to R.C. 2941.25, a court must review the entire record, including arguments and information presented at the sentencing hearing, to determine whether the offenses were committed separately or with a separate animus." *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 24. "Merger is a sentencing question, not an additional burden of proof shouldered by the state at trial." *Id*. at ¶ 18. It is the defendant who bears the burden of establishing his right to merger. *Id*.

**{¶ 18}** R.C. 2941.25 provides, in its entirety:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

Division (A) states the conditions necessary for merger: the same conduct resulted in multiple offenses, and the offenses are of similar import. *Washington* at ¶ 12. "Restated in the negative, offenses do not merge if they were 'committed separately' or if the offenses have a 'dissimilar import.' R.C. 2941.25(B). In addition to these restrictions, [division (B)] identifies another bar to merger for offenses committed 'with a separate animus as to each.' " *Id*. The first merger consideration "is whether it is possible to commit one offense *and* commit the other with the same conduct * * *." (Citation omitted.) (Emphasis sic.) *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 48. "If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import." *Id*. The second consideration is "whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.' " *Id*. at ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 50 (Lanzinger, J., dissenting).

{¶ 19} The analyses of two courts in cases analogous to the present one are helpful. In the first case, *State v. Bray*, 2d Dist. Clark No. 2010 CA 14, 2011-Ohio-4660, the defendant was convicted of having weapons while under disability, possessing a firearm in a liquor-permit premises, and carrying a concealed weapon. He had acquired the handgun on which these offenses were based two or three years before the evening on which he committed the offenses. This, we said, was sufficient to support the charge of having weapons while under disability. His later act of concealing the handgun constituted "a separate and distinct act from initially acquiring it." *Bray* at ¶ 23. This concealment was an act separate from his act of entering the liquor-permit establishment with the handgun. In the second case, *State v.*

*Cowan*, 8th Dist. Cuyahoga No. 97877, 2012-Ohio-5723, the defendant was convicted of felonious assault, having weapons while under disability, improper handling of firearms in a motor vehicle, and discharge of a firearm near a prohibited premises. "[E]ach involved a separate animus and could not result in the commission of each other under these factual circumstances," concluded the appellate court, because the conduct underlying each offense occurred at different times. *Cowan* at ¶ 39. The offense of having weapons while under disability occurred when the defendant acquired the handgun, and the felonious assault occurred when he shot at the victim. The discharge and improper handling of the firearm occurred about an hour before the shooting, respectively, when the defendant fired the gun at the ground while sitting in a vehicle and when the defendant then drove away with the gun. Said the appellate court, the fact that the defendant used the gun he had acquired to commit the other offenses "does not absolve [him] of the criminal liability that arises solely from his decision to illegally possess the weapon[]." *Id.*

{¶ 20} Wilcox committed the offenses of having weapons while under disability, improper handling of firearms in a motor vehicle, and tampering with evidence with different conduct, at different times, and therefore with separate animuses. He committed the offense of having weapons while under disability when he (necessarily) acquired the gun before he got into the SUV. Wilcox committed the improper-handling offense when he brought the gun into the SUV, and the evidence the State presented in support of the tampering offense occurred when he hid the gun under the driver's seat. Therefore the trial court was correct not to merge these offenses.

{¶ 21} The second assignment of error is overruled.

## C. The Sufficiency of the Evidence

{¶ 22} Skipping to the fifth assignment of error, it alleges that the tampering-with-evidence conviction is not supported by sufficient evidence. "A sufficiency of the evidence argument challenges whether the State has presented evidence on each element of the offense alleged to allow the case to go to the jury or sustain the verdict as a matter of law." *Dewitt*, 2010-Ohio-6476, ¶ 8, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).

{¶ 23} Wilcox was convicted of tampering with evidence for hiding the handgun under the driver's seat, in violation of R.C. 2921.12(A)(1), which pertinently provides that "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation." R.C. 2921.12(A)(1). "A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). Wilcox contends that there is no evidence that he knew that an investigation was in progress or likely to be instituted regarding the handgun.

{¶ 24} The Ohio Supreme Court recently considered the proof needed for a tampering conviction under R.C. 2921.12(A)(1). In *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E. 3d 1175, detectives stopped the defendant after seeing the car she was driving travel left of center. The detective who spoke with the defendant smelled alcohol and asked her to step out of the car. He noticed that her speech was slurred, and she could not produce a driver's license. The detectives decided not to charge her but would not let her drive home. While they were trying to arrange a ride for the defendant, she suddenly "trotted

20 to 30 feet away to the corner of a building, saying, 'I'm not running; I just gotta pee. I don't care if you have to arrest me; I gotta pee.' " *Straley* at ¶ 3. This she then did. After Straley returned, one of the detectives walked over to the building corner and found a baggie of crack cocaine covered with urine. The defendant was arrested and convicted of trafficking, possession, and tampering with evidence. The appellate court–this Court–reversed the tampering conviction, holding that "there was no proof of the third statutory element of purpose to impair the value or availability of evidence related to an ongoing or likely investigation." *Id*. at ¶ 14. The Supreme Court affirmed, holding that "a conviction for tampering with evidence pursuant to R.C. 2921.12(A)(1) requires proof that the defendant intended to impair the value or availability of evidence that related to an existing or likely official investigation or proceeding." *Id*. at ¶ 19. "Likelihood is measured at the time of the act of alleged tampering," said the Court, and "[t]here is nothing in the record to suggest that the officers were conducting or likely to conduct an investigation into trafficking or possession of cocaine when [the defendant] discarded the baggie." *Id*. Furthermore, the Court continued, "[t]he baggie of cocaine did not relate to either an ongoing investigation of driving while under the influence of alcohol or driving without a license and had no evidentiary value to a likely investigation of public urination * * *." *Id*.

**{¶ 25}**  The tampering offense has three elements: "(1) the knowledge of an official proceeding or investigation in progress or likely to be instituted, (2) the [impairment] * * * of the potential evidence, (3) the purpose of impairing the potential evidence's availability or value in such proceeding or investigation." *Id*. at ¶ 11. The issue in *Straley* is whether a conviction " 'requires proof that the defendant impaired evidence in an investigation by tampering with

evidence *related to the investigation*.' " (Emphasis added.) *Id*. at ¶ 1. And the Court's decision emphasizes the defendant's knowledge at the time she impairs the evidence. Interpreting the tampering statute, the Court concluded that " 'such' investigation refers back to the investigation just specified, i.e., the one that the defendant knows is ongoing or is likely to be instituted." *Id*. at ¶ 16. "Therefore," said the Court, "the evidence must relate to that investigation." *Id*.

**{¶ 26}** Here, there was arguably an investigation in progress when Wilcox hid the handgun. The police officers' testimony shows that when they saw Wilcox lean over they immediately suspected a weapon. This suggests, at best,  that an investigation regarding Wilcox's possession of a weapon was initiated a split-second before he actually placed the handgun under the driver's seat. The problem is that there is no evidence that Wilcox knew about this investigation or knew that it was likely. Therefore a reasonable juror could not find that Wilcox's purpose in putting the handgun under the seat was to impair its availability in the officer's investigation. Given the Supreme Court's decision in *Straley*, we must conclude that the record here does not support a conviction for tampering with evidence.

**{¶ 27}** The fifth assignment of error is sustained.

### D. The Manifest Weight of the Evidence

**{¶ 28}** The third assignment of error alleges that Wilcox's convictions–trafficking in heroin, possession of heroin, tampering with evidence, having weapons while under disability, improper handling of firearms in a motor vehicle, possession of cocaine–are against the manifest weight of the evidence. Wilcox argues that the weight of the evidence shows that these items belonged to McCoy and were in the SUV before he got in. The gun and drugs

were not found on him but in the SUV, Wilcox points out, and there were no fingerprints found on the gun. He further says that the officers did not see him hide the gun under the driver's seat or put the drugs into the glove box. Wilcox contends that McCoy is not credible. He points out that McCoy admitted to previously dealing drugs, and he says that it is reasonable to believe that McCoy did not want to get caught with the gun and drugs. Wilcox also notes that the State offered McCoy a deal to testify against him. Furthermore, Wilcox says that he was wearing denim shorts and a T-shirt, so there was no way for him to have gotten the bag of drugs (which was about the size of a softball) and handgun into the SUV without McCoy's seeing them. Wilcox also contends that the police officers were not credible when they testified that they saw him leaning over toward the driver's seat. Wilcox points out that the officers testified that his leaning over made them concerned for their safety but that they left him in the vehicle until the dog arrived. If the officers had actually seen him leaning over toward the driver's side, Wilcox asserts, they would have pulled him out for their safety.

**{¶ 29}** "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *Dewitt*, 2010-Ohio-6476, ¶ 25. The manifest-weight test is familiar: " 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983). Although a weight-of-the-evidence challenge

permits a reviewing court to consider the credibility of witnesses, that review must be tempered by the principle that weight and credibility questions are primarily for the trier of fact. *State v. Goldwire*, 2d Dist Montgomery No. 19659, 2003-Ohio-6066, ¶ 13, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. " 'Because the fact finder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the fact finder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the fact finder, who has seen and heard the witness.' " *Id.* at ¶ 14, quoting *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). "This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict." (Citation omitted.) *Dewitt* at ¶ 29.

{¶ 30}  We are concerned here with all of the convictions except that for tampering with evidence, which we have concluded is not supported by sufficient evidence. Wilcox fails to convince us that the jury should not have believed McCoy or the officers. His arguments are merely his own inferential conclusions, drawn from the testimony, that these witnesses were lying. But we see no reason why the jury needed to draw the same inferences. With McCoy's and the officers' testimony, the manifest weight of the evidence is not against Wilcox's convictions.

{¶ 31}  The third assignment of error is overruled.

### E. Sentencing

**{¶ 32}** Lastly, the fourth assignment of error alleges that the trial court erred by ordering consecutive service.

**{¶ 33}** There is a statutory presumption in favor of concurrent sentences for most felony offenses, *see* R.C. 2929.41(A), but this presumption can be overcome by judicial fact-finding, *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 23. R.C. 2929.14(C)(4) provides that a trial court may order consecutive service if it makes three findings:

> If multiple prison terms are imposed on the offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender * * * was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that

consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶ 34}** "On appeals involving the imposition of consecutive sentences, R.C. 2953.08(G)(2)(a) directs the appellate court 'to review the record, including the findings underlying the sentence' and to modify or vacate the sentence 'if it clearly and convincingly finds * * * [t]hat the record does not support the sentencing court's findings under division * * * (C)(4) of section 2929.14 * * * of the Revised Code.' " *Bonnell* at ¶ 28. " 'This is an extremely deferential standard of review.' " *State v. Rodeffer*, 2d Dist. Montgomery No. 25574, 2013-Ohio-5759, ¶ 29, quoting *State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453, ¶ 21 (8th Dist.).

**{¶ 35}** The trial court here imposed these prison terms:

· 11 years for heroin trafficking, a first-degree felony;

· 3 years for tampering with evidence, a third-degree felony;

· 3 years for having weapons under disability, a third-degree felony;

· 18 months for improper handing of firearms in a motor vehicle, a third-degree felony;

· 12 months for cocaine possession, a fifth-degree felony; and

· 12 months for each firearm specification.

The court ordered concurrent service of the firearm-specification terms and consecutive service of the remaining terms, for a total prison term of 20.5 years. Of course, the total is now 17.5 years, given our ruling on the fifth assignment of error. At the sentencing hearing, the trial court reviewed Wilcox's "lengthy history of criminal convictions." (Sentencing Tr. 12). Between 1993 and 2013, Wilcox was convicted on numerous drug charges, multiple theft charges, a charge of

assault, multiple charges of falsification, a charge of criminal trespass, and a number of OVI charges. Wilcox, the court noted, "has not responded favorably to sanctions previously imposed. The same or similar offenses continue." (*Id.*). The court also noted that "there is no genuine remorse." (*Id.*). The court found that consecutive sentences are necessary to protect the public from future crime and to punish Wilcox and found that they are not disproportionate to the seriousness of his conduct and the danger he poses to the public. The court found that Wilcox committed the offenses while he was under post-release control in two other courts. And the court found that Wilcox's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime.

7    Wilcox contends that consecutive sentences are disproportionate to his conduct or the danger he poses to the public. However we are unable to find that the trial court was clearly and convincingly wrong in its findings for imposing consecutive sentences, which is our standard of review. He also says that he was not selling drugs and that nobody was harmed by him. But Wilcox was found guilty of trafficking heroin, that is, guilty of "[p]repar[ing] for shipment, ship[ping], transport[ing], deliver[ing], prepar[ing] for distribution, or distribut[ing]" the heroin "know[ing] or ha[ving] reasonable cause to believe" that it "[wa]s intended for sale or resale," R.C. 2925.03(A)(2). Officer Elliot testified that one dose of heroin is 1/10 of a gram. Which means that Wilcox, with 95.99 grams, was part of an effort to sell almost 1,000 doses of heroin to the public. It is only because he was caught that no one was harmed.

8    The fourth assignment of error is overruled.

9    The conviction for tampering with evidence is reversed and vacated. The rest of the judgment of conviction is affirmed. This case is remanded for the trial court to issue a

Judgment Entry reflecting that the tampering conviction is vacated so an accurate aggregate sentence can be communicated to the Ohio Department of Rehabilitation and Corrections.

. . . . . . . . . . . . .

FROELICH, P.J., and FAIN, J., concur.

Copies mailed to:

Ryan A. Saunders
Anthony S. Vannoy
Hon. Richard J. O'Neill